Good morning, Your Honors. I'm Victor Haltom. I'm the attorney for Richard Williams in this appeal. May it please the Court. If this Court finds that the record in this case is adequately developed, then the ultimate issue for this Court to determine is whether the prosecutor in Mr. Williams' trial was motivated in substantial part by race when he exercised a peremptory challenge against the only African-American prospective juror who was available to serve in this case. I believe that the record in this case is adequately developed for this Court to reach that issue. The record contains abundant evidence that the peremptory challenge in question was, in fact, exercised in part based upon race. Now, the prosecutor certainly did have some legitimate ---- It seemed to me that you said initially primarily and second in part. What standard are you suggesting? The ---- I'm sorry for being imprecise there, Your Honor. The Crittenden case which I cited to this Court, which was recently decided by this Court, is, I think, the governing authority here and says that the test is, was the strike based in substantial part on race-related considerations? And if that's the case, if this Court makes that finding, then that's the end of the analysis. Mr. Williams. Counsel, if, in fact, the trial court did not decide the issue of pretext, and if, in fact, articulating reasons is not the same as determining the reasons are genuine, wouldn't this error and the failure to find that there's a prima facie case just justify granting the petition and sending it back and having the trial court decide it right? That's certainly a disposition that this Court could consider. Isn't that Fernandez v. Roe? Fernandez v. Roe did have a disposition that was similar to that. Fernandez v. Roe involved an erroneous prima facie determination, and this Court did issue a disposition, I think, as Your Honor just described. Now, however, it seems to me that then we ought to do it. We got the Court, we got the case, Fernandez v. Roe. We got the errors. We got the failures to do what they needed to do. Fernandez is appropriate. That's my backup position, Your Honor. Well, that's the backup. What you've just articulated. Well, give us the primary position. The primary position here is that this Court has the ammunition before it with which to conduct meaningful comparative juror analysis. I've laid those. What's the case that would allow us to do that instead of what Judge Smith just suggested? Well, there are a number. I mean, Millerell v. Dretke by the U.S. Supreme Court. This Court's decisions in Green v. Lamarck in Crittenden, this Court engaged in comparative juror analysis, although in Crittenden this Court did issue a remand order. I believe, as I understand Crittenden, that was done because the district court in that case made a finding that there was substantial race-related motivation. The Supreme Court has told us over and over again and reminded us over and over again that trial courts are better equipped to make factual determinations, to parse the record and where appropriate engage in comparative analysis. And they pretty bluntly told us that we're not terribly good at it. It's not part of our function. So why not send it back and let the district court take a chop at it and make detailed factual findings from which we can conduct an appropriate review? That certainly is a possibility in this case. Well, you better get around then to telling us why it's not the proper way, if you In Green v. Lamarck, this Court said that even a reviewing court is required, as part of Batson analysis, to conduct comparative juror analysis. This Court can do that in this case because the prosecutor here was asked for or afforded the opportunity at trial to give his reasons. In Miller L. v. Dretke, Justice Souter, writing for the Court, said when a prosecutor states his reasons, he's got to stand or fall on those reasons. The prosecutor in this case has to stand or fall on the reasons he articulated. And a bunch of those reasons have been shown by this record to be pretextual in this case. Those reasons include the prosecutor stating that he exercised the strike in this case against Ms. Thompson, the juror in question, because, number one, she stated on an answer in the juror questionnaire that she strongly disagreed with the proposition that somebody brought to trial is probably guilty. Six other ---- I don't know if that's a pretext or not. It's certainly a dumb statement. But, again, aren't you asking us to assume that an analysis which, in fact, on this record was never done was incorrect, sort of prejudging it? If you're asking me, there was never a Step 3 Batson inquiry done in this case. There hasn't been anywhere in the State judiciary. There wasn't a meaningful Step 3 inquiry conducted at the district court, in my opinion. So in that sense, it's ---- In law school, my contracts professor was fond of Latin and the phrase, a fortiori, even more so. Doesn't that argue even more so for the kind of remand Judge Smith was talking about? The ---- again, I wouldn't strongly object if this Court granted this petition, gave limited habeas relief, and sent the case back down. But my question would be, why? Does this Court need to do that? Doesn't this Court in this case ---- and that's why I opened my remarks with it. But say why does this Court ---- obviously, the case is where it should be sent back. Why in this case, under what rule should it not be? I think that the best I can answer that, Your Honor, is to say that when a prosecutor has been afforded the opportunity to give his justifications, as he was here, then the reviewing court has the necessary factual basis upon which to conduct that comparative juror analysis. And the ---- Who ---- which decision do we really review here in this case? Don't we review the California Court of Appeals' decision? Aren't they the last court in California to review this? And if we're going to give any deference to them at all, that's the case ---- that's the decision we give deference to. Yulst v. Nonemaker, the Supreme Court's decision in that case says we look through to the last reasoned California decision. And even California Court of Appeal affirmed this, applying the wrong legal standard. Multiple wrong legal standards, yes. That's your argument. And if I agree, then I got this exhaustion of state remedies as a prerequisite to federal habeas relief, Rose v. Lundy. And here I am. You're asking me now to take the trial court didn't use the right standard. The Court of Appeals didn't use the right standard. Nobody, till they get to me, uses the right standard. And now you want me to apply the principles that I would use in a normal situation. And I guess that's, again, what case do I have to suggest that? Well, in Miller-Eld v. Dretke, that case was tried before Batson. So there was clearly no correct standard applied there, Your Honor. The Supreme Court ultimately did conduct a comparative juror analysis on its own. Admittedly, however, after remanding the case back down for a Batson hearing, where the prosecutor was asked certain questions, which he should have been confronted with at the trial court. Here, I think one of the potential problems, though, with a remand is this was a 1998 trial. Here we are going into 2011, but however, if we look at the evidence on this particular thing, we've got the voir dire record. We do. We've got the jury questionnaires. The prosecutor's testimony would have to be taken, I guess, but that could be taken now. So I guess other than the case is 12 years old, we really could have the trial court look at what happened. But here, Your Honor, what more is the prosecutor going to add? He's been asked to state his reasons. He did state those reasons. He stated them in detail. And now we have, I see that I'm out of time here, but we have all the relevant information in the record to assess and compare the prosecutor's stated reasons. If I could reserve the balance of my time. Good morning, Your Honors. Carlos Martinez from the California Attorney General's Office, representing the appealee. I wanted to address a couple of the questions that was asked. This is not an AADPA case. I stated that in my standard of review section, that we do not look to the California Court of Appeals decision because the California Court of Appeal used the wrong standard. This is a pre-Johnson v. California case. And the effect of that is that this Court looks at this case de novo, with some deference under 2254e1 of the 20 of Section 28. The prosecutor stated his reasons. He was given an opportunity by the trial court to state his reasons. Under those circumstances, the U.S. Supreme Court, a polarity opinion about a U.S. Supreme Court in Hernandez, states that we then skip step one. We assume that the defendant has met his burden. Circuit authority, Stubbs, which I've cited, says the same thing. We assume that step one has been, in fact, met by the Petitioner. Then we move on to step two and step three. This case is a Batson step three case. And so we take a look at those reasons that the prosecutor gave. The prosecutor gave several reasons. And the most striking is that juror, that the prospective juror, Ms. Thompson, had a petty theft prior. And clearly the prosecutor let a juror sit who had a malicious mischief conviction. That's absolutely right. Here's the difference. What an appellant fails to recognize is that malicious mischief has changed. Remember, this juror, juror number 11, the one that was left on the jury, is 50, was 52 years old when he was on the jury. That meant he was born in 1946. He attributed the malicious mischief to being, having suffered growing pains. Malicious mischief was changed beginning in 1975. It only appears as the heading for the Title XIV of the California Penal Code. Malicious mischief doesn't appear as a crime. Was he asked about that? He wasn't asked about that because the prosecutor ---- I didn't ask you to say because. I asked you whether he was questioned about that. No, he wasn't. And the answer is no. No. Correct? That's correct, Your Honor. She was asked about the petty theft conviction. That's correct, Your Honor. And she said at the end that she was relieved by the outcome. That's correct, Your Honor. She thought she was treated fairly. That's correct, Your Honor. And we don't know what juror number 11, the 52-year-old male, thought about his experience because he wasn't asked. Well, he actually said in his questionnaire, he actually said everything worked out right. The system worked or something of that extent. He said that he was fine with and he had no problems with that conviction. He also said that a family member or a close friend, it's not clear, was arrested for forgery. Yes. And the prosecutor never asked him about that. Never even clarified whether it was him, his wife, his brother, his sister. If you look at E.R. where it's actually listed, Your Honor, where his crimes are actually listed, he lists curfew violation, malicious mischief. Can we get you over by the microphone? Yes, Your Honor. Thank you. Curfew violation, malicious mischief, and being drunk. He doesn't mention the forgery. And he says you're not responding to my question. It is true that he indicated that a family member or close friend was arrested for forgery. That's correct. He was never asked about that, who it was, whether it was his wife, his best friend, his lover, whoever. That's correct. Or what impact that would have upon his fairness and impartiality, correct? That's correct, Your Honor. But if you look further into the questionnaire, it becomes clear that the friend or himself was actually the victim. If you look at the questionnaire and read that questionnaire, he or the family member or friend was the victim of forgery. One of the reasons he gave sort of suggests that he's looking for jurors who don't believe in the presumption of innocence. That's correct. And there's nothing wrong with that? Well, that wasn't my idea. Come on. You're an officer of the court. No, Your Honor. Wait a minute. Let me ask my question. Just stop for a minute and listen. Do you think it's appropriate for a prosecutor who's prosecuting a criminal case to, in effect, take the position that he prefers jurors who do not believe in the presumption of innocence? That particular question was not actually asked, Your Honor. Well, what was at his stated his reason, one of his reasons was her response to the question, if the prosecution brings someone to trial, that person is probably guilty, and she checked disagree strongly. I would hope every American citizen would check the box that way. That was a minor reason, according to the trial court. Did the prosecutor say that was a minor reason? The prosecutor explained his reasons to the trial court, the trial court examined Did the prosecutor say that was a minor reason? No, Your Honor. He did not. He did not say that. So what do we make of that? He's got reasons here in the list of things which are clearly, to my mind, pretextual, and some which have some substance, like her experience with law enforcement. So what do we do? Well, we take a look at those reasons, Your Honor. How many have to be pretextual? Well, I don't think – I think what we do is, again, Judge Hawkins and the majority in Cook took the position that we don't use the but for test, that we take a look – go ahead and determine what really were the prosecutor's primary reasons. And the primary reason here is that petty theft conviction. I must say there is no juror with a petty theft conviction or a conviction that indicates moral turpitude or looks badly. My question was how many, and the answer is, in Kessler v. Camber, it says not what the primary reason is, but if many of the proffered reasons may be deemed a pretext for racial discrimination. That's all we need. Then we have a case where it says 2 out of 4 is enough for reversal. Right. Okay. Now, suppose 5 out of 7, 4 out of 7 of this list are pretextual. Well, here's the problem, Your Honor, I guess for this – for this Court. The burden of proof really is on Petitioner because this is a Step 3 Batson claim. We take a look at those reasons and we weigh them, noting, again, no – no juror indicates that they had a problem with a police officer. No juror indicated that they had anything close to a petty theft prior. There were some overlap. I – I – Overlap. She was single and never married. Right.  That's – that's true, but the question – So what – what is that reason that she was single? It's – I – I totally disagree with the prosecutor's statement that he didn't like to have single people on the jury. Single women. Single women on the jury. He had no problem with single men. Well, he said he didn't – he didn't say – he said single – people who have never been married. That's what he – he said. I believe that that's an extremely weak reason. Weak? It sounds like a pretextual reason. Well, but – If you're looking for every reason to get rid of a black juror, that might be one you would offer. But if you – He didn't get rid of any white jurors for that reason. Well – Who were never married. That's just one. Let's take a look. Let's take a look, then, at the – there's – there's two – there's two statements. Then we have Judge Hawkins' reason, that she believes in the Constitution. And that's another reason. Well, there are – as you can go down this list, there are others that are equally pretextual. It's not enough to say, I like other jurors better. Well, any time you get the only black juror, you can say, I like other jurors better. I'm sure he did. Here's what I – I think happened, Your Honor. Back in 1998, this prosecutor was challenged. He went down his list of why this juror, Ms. Thompson, had some negatives. He was trying to be thorough in his response. He was – The record to me looks like he was being inventive. He was – that could be your point, Your Honor. And I'm – and – He was making things up. No, Your Honor. I disagree. And this is why I disagree. When you look at the juror that was single, her father, the juror that actually sat, this is J7, okay, father, a retired sheriff, boyfriend, a correctional officer, prior juror experience in a robbery case. Another single – the other single juror. Well, while you're looking for that, let me just get your position clear. Your position is that this Court is a proper body, the record being fully developed, and steps 1 and 2, we properly bypass, and we're at step 3. We're at step 3, Your Honor. And it's a function of this Court to resolve step 3. That's correct, Your Honor. And – and I – I do believe that. I know that that is actually my disadvantage. That's a disadvantage for me. But I believe, based on the case authority, Hernandez and Stubbs, we are in step 3. This is not an ADPA case. I found, by the way, that juror 3 was single, and all of her responses were on question 36, 37, 38, 39, and 40 were – were all pro-prosecution responses. So – Well, I guess – I guess my problem comes somewhat like my colleague's question.  Yes. And I'm looking at the questions answered, and whether they show an evidence of pretext or they don't, what is your argument as to how I'm to weigh these particular situations? Because you – you don't seem to think that the possible tension between her and the prosecutor is much to your advantage, or at least you haven't talked about it. Well – You don't – I mean, you said there she's had a particularly bad experience with the motorcycle officer, and that that – no other juror had that experience. So it seems to me you pull that up. The petty theft, your – your argument is pretty hard that that's different than a malicious mischief. But the way that she was questioned about a petty theft is quite a bit different than the way that Juror 11 was questioned. And the other issue that Judge Hawkins brings up I think is certainly pretextual. I don't think you can say that a juror is out to lunch simply because they believe the Constitution to be correct. And so, therefore, we go down through this, no – no juror gave answers similar to hers as to Pratt and Abu Jamal. But I don't know, I guess that you didn't seem to think that was quite as important because I haven't heard that, but I guess that's – that's the worry that I have with no good record except taking what the prosecutor says after everything's taken care of and tries to just laundry list, either on one side invent or on the other side be thorough, and try to decide this case. Yes, Your Honor. I don't think it's difficult because of the burden of proof and the fact that the trial court examined the prosecutor's demeanor when he gave those reasons. The prosecutor actually gave a laundry list of reasons. The trial court credited those reasons and said that they were not problematic, that he – he in fact found the prosecutor credible. Well, isn't that true every time we get a Batson case that the trial judge believed that the prosecutor was not being biased or pretextual? Isn't that inherent in the trial judge's determination? What Johnson v. California and Miller-Rell says is that we weigh everything. No, I'm saying that we would weigh that every time. That's correct. And still, when we get to the cases where pretext has been found, we – I assume that in every one of those cases we've weighted, and yet we still say that when there are several of the proffered reasons, that's enough. The – the Johnson and Miller-Rell says that we weigh everything, and that we give We weigh the fact that it's the only black juror and the fact that in the last trial? There were – there were actually two other black jurors. They were, I believe, removed for a reason because they were unavailable. They were excused. They were unavailable. So that we're left with one black juror in this case. That's correct. And do we weigh that plus what happened in the prior trial? Yes, Your Honor. Yeah. Okay. So we weigh all the circumstances in life. And you weigh – you weigh – you weigh all – everything. And you also weigh the – the prosecutor's statement in front of the trial court that said, I did not consider that prior trial, what happened in that prior trial, in my – in my statement of reasons why to strike Ms. Thompson. That's – he says that as an officer of the court to the trial court. And the trial court is looking right at him. So that's – that's where we have deference. I want to add that that – I know my time is up. You're, in fact, almost seven minutes over your time. Thank you, Your Honor. I appreciate – I do appreciate the time the Court has. I just want to add that this is a 2254e case as well, that we get that deference. And the reason I don't believe that you need to send this back is because the trial judge already examined this particular prosecutor and the – and he was believed by the prosecutor. Thank you, Judge. Okay. Thank you very much. May I briefly respond? Two minutes, if you need them. Thank you, Your Honor. Just very briefly, the – I just want to address two points. The – my reading of the record, which I summarized at 20 – at page 27 of my reply brief with respect to the purported trial court assessment of the prosecutor's credibility, I don't believe that any such assessment was made by the trial court. The trial court just said, I think that the – Mr. Gold, the prosecutor, did a pretty good job of articulating his reasons. I don't see how one could characterize that as an assessment of credibility. It's just a – he did a workmanlike job of articulating step two. Well, don't you think if a judge thought that the prosecutor was not being honest, he would say that and he would find that it was pretextual? If he was going to step three, but this judge says, I'm cutting this off at step one, Mr. Gold, you're the prosecutor, your case. I leave it to you if you want to state any reasons. The judge disavowed any effort to do the step three inquiry. And finally, if I – I would just like to point out that I think that the State's argument in this case on the ultimate Batson step three inquiry is a mixed motive argument to this Court. The State is not focusing on the proper test articulated in Crittenden and Crittenden's predecessor, Cook v. Lamarck, which is that the sole question at step three is was race a substantial factor, and this Court has gone through the laundry list of pretexts, which why do you cook up pretexts unless you've got something to hide? So I'd respectfully submit it with that. Thank you, counsel. Thank you both. The case will be submitted.
judges: Reinhardt, Hawkins, Smith N. R.